## SCHEFF, a Taxpayer, etc v WIEGAND, Mayor, etc

Ohio Appeals, 8th Dist, Cuyahoga Co
No 11225. Decided Sept. 29, 1930

Farquharson, Curtiss, Gillie, Gustafson & Miller, Cleveland, for Scheff.

R. G. Curren, Cleveland, for Weigand.

Squire, Sanders & Dempsey, Cleveland, for C. O. Bartlett & Snow Co, Competitive Bidder.

VICKERY, PJ.

We have heard this case upon the evidence that was introduced in the court below, the statements, briefs and oral arguments of counsel, and have come to the conclusion that the injunction must be granted, but only upon one ground. Upon the other allegations of the petition except the one that will be hereafter referred to, this Court finds in favor of the defendant, that is, that the bonds were regularly issued under and by virtue of authority of law; that the plans and specifications were sufficient under the statute, and that the specifications furnished were sufficiently broad upon which competitive bids might be based, for it must be remembered this was an incinerator and garbage reduction plant and a certain result was sought to be accomplished; and under the specifications that were prepared by Engineer Fisher of the City of Lakewood the bids might be for various types of incinerator plants, and the building of the plant must, in a measure, be a part of the entire result to be accomplished, and the specifications were sufficiently broad so that various companies or firms engaged in erecting incinerator or garbage reduction plants might become competitors to erect this particular plant. As a matter of fact seven or eight competitive bids were submitted for the erection of this plant. So far as the furnishing of plans to the Health Department of the State was concerned, after the bid and plan of the incinerator plant to be furnished was submitted to the State Department of Health and its approval could be made before a contract was entered into, it would comply with the statutes in this respect,— the specifications and the ground plan, the location and so forth being first furnished, —and then after the type of incinerator plant was determined upon, the plans and specifications for that plant as determined upon, could be furnished to the State Department and, of course, that could not be done until after the bid had been tentatively approved.

We understand in this case that the plan submitted by the successful bidder was approved by the State Department of Health and therefore, in so far as all the objections to this plant by the plaintiff are concerned, we simply refuse the relief sought on all grounds except one, and that I am coming to now.

It seems that the specifications and blueprint for ground plan were furnished, which would show the character and location of the plant. That the successful bidder was the lowest bidder there is no question. I think it was lower by some seven thousand dollars than its next nearest bidder.

The difficulty arises in that the bid of the successful bidder was not accepted in the terms that it was made, but verbal agreements were subsequently added to it by the successful bidder.

We are pointed out a statute, **4331 GC**, which provides that after a contract is let if it becomes necessary to make changes, such changes may be made in the contract and deductions or additions in so far as compensation is concerned may be allowed. The trouble with that argument is that here was a written bid which did not conform to the specifications, and subsequent-

ly a verbal modification of the bid would give the successful bidder an opportunity which the others did not have. In other words it was not a competitive bid, because the bid as submitted was not accepted, nor was it acceptable, nor did it conform to the specifications, and the mere fact that the successful bidder afterwards agreed to make certain modifications and changes in order to conform to the specifications would be a radical departure from the bid; and while in this case there might be no harm done, it would be a dengerous precedent to establish, because it might open the door wide to fraud and connivance between the bidder and the authorities, which the statute meant to prohibit.

A letter from one of the councilmen recommending this bid, which is in the record, shows that another agreement was entered into, other than the one included in the bid itself, and we think this is a dangerous precedent to establish, much as the writer of this opinion knows that the City of Lakewood needs an incinerator plant and is heartily in sympathy with the Council in trying to establish such a plant, for it must be remembered that these changes were not the changes that 4331 GC contemplates, but before the contract was entered into additions and subtractions were made which very greatly changed the character of the bid that was submitted and which, if it had been in the contemplation of the party before the bid was made, might have increased its bid more than the seven thousand dollars so it would not have been the lowest and best bid.

Aside from this there is another matter and that is in adding to the specifications in the original bid. One of the specifications provided as to the method of test desired by the City of Lakewood before they accepted this plant, and it outlined what that test must comprise and what the test must be. Now instead of answering this question or agreeing to it, they say in the bid: "See letter", which they made a part of their bid and which would naturally be a part of the contract. Now an examination of that letter will show that it very materially departs from the test that the city demanded in its specifications and which undoubtedly the other bidders agreed to. It states an entirely different situation and condition under which the test must be made and under the specifications, if the successful bidder would build this incinerator plant and it did not come up to the test in the specifications, this bidder could point, and rightfully point, to the modification in the letter which accompanied its bid and changed the specifications in that respect. This the successful bidder had no right to do.

Now the matter may seem simple, but it is much graver than that. In this case the successful bidder was to give a bond, I believe, in the amount of its bid, something like $77,000, that the plant would perform what it was sought to have it perform and what the test demanded that it should perform, so that if it did not conform to the test set up in the specifications and a suit was brought upon the bond against the Company and the bondsmen, they could very naturally and would undoubtedly plead that that was not their contract, and refer with much force and effect to the letter accompanying the bid.

Now we think that this is a dangerous precedent to establish and one which would hazard a recovery upon this bond if the successful bidder should build this incinerator plant and it did not perform as it was designed that it should perform. The method of delivering the refuse is so entirely different than the specifications provide. They might well place $7000 lower on their bid if, as they wanted, the refuse it should be delivered to their furnaces so that they could continuously perform. The incinerator plant contemplates the disposal of 75 tons of refuse per day. Now that necessitates the storing of about three-fourths of that refuse because it is all gathered in an eight hour shift and it is put upon the receiving room floor of the plant on the second floor; and if the specifications as modified by the successful bidder in the letter would be carried into effect, it could demand that the wagons continually stand in line and be driven upon the receiving floor where it could be dumped into the furnace from the trucks and under those circumstances they say that their plant would be a success.

Now we think that this is a grievous error in the matter and one which might jeopardize the right of Lakewood to recover on the bond if this plant should not be a success, and it is for the reason and only for the reason that the bid did not conform to the specifications because subsequent modification by parol and by letter were made to the bid, and because the bid did not conform to the demand of the specifications with respect to the test to be made, but added something which was a radical departure from the test demanded by the City, that we think that the injunction prayed for by the plaintiff should be granted.

The injunction will be granted and a decree may be drawn along these lines.

Levine and Cline, JJ, concur.